# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

TRAVIS J. SMITH,

        Petitioner,

  v.                                                                                        Case No. 05-C-34

MICHAEL THURMAN,
  Warden, Waupun Correctional Institution,

        Respondent.

## **DECISION AND ORDER**

On January 13, 2005, petitioner Travis J. Smith filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of armed robbery, with threat of force, and false imprisonment with use of a dangerous weapon. He was sentenced to concurrent terms of thirty and five years. The petitioner filed a motion for appointment of counsel which was granted. Twice counsel was appointed for the petitioner. However, both attorneys moved to withdraw. The petitioner is currently proceeding without counsel.

The petitioner filed various motions for discovery and for an evidentiary hearing, which were denied. He also filed six motions for reconsideration of the court's orders. The court denied all of the motions by written decision.

The petitioner challenges the judgment of his conviction which was entered on April 16, 2002. In his petition, the petitioner alleges that: (1) police manufactured false evidence and gave false testimony depriving him of a fair trial and due process; (2) his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest and search and seizure;

and (3) his conviction was obtained by the unconstitutional failure of the prosecution to disclose exculpatory evidence. In his brief filed in support of his petition for a writ of habeas corpus, the petitioner listed these three issues:

> 1.) Did the State's expert witness manufacture false evidence and give false testimony related to fingerprint evidence.
> 2.) Was the petitioner entitled to an evidentiary hearing on his claim that the police gave false testimony and manufactured false evidence.
> 3.) Did the State deprive the petitioner of due process and a fair trial by knowingly and intentionally providing false evidence at the petitioner's trial.

(Brief and Appendix of Defendant-Petitioner Travis J. Smith at 3).

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

Judge William C. Griesbach conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By order filed March 30, 2005, Judge Griesbach ordered the respondent to answer the petition for a writ of habeas corpus. The respondent answered the petition and the parties subsequently briefed the petition for a writ of habeas corpus. Therefore, the petition is ready for disposition and will be addressed herein.

## APPLICABLE LAW

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. Lindh v. Murphy, 96 F.3d 856, 870-77 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F.Supp.2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]). A state court's factual determination is correct unless a petitioner overcomes it with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams

- 3 -

Case 1:05-cv-00034-PJG   Filed 01/11/08   Page 3 of 12   Document 71

v. Taylor, 529 U.S. 362 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 120 S. Ct. at 1523).

A federal court may also grant habeas relief if the state court unreasonably applied Supreme Court law or based its decision on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). A state court's factual determination is correct unless a petitioner overcomes it with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

> [u]nreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 120 S. Ct. at 1522). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

## RELEVANT FACTUAL BACKGROUND

The preliminary facts of this case were set forth by the Wisconsin Court of Appeals in its June 8, 2004, decision:

> Travis J. Smith was charged with robbing the Guaranty Bank at 7901 West Brown Deer Road in the City of Milwaukee. Sara Gardner, a bank employee, told the police that she was standing in the bank's doorway looking through her purse for a key card when a man with a gun came up to her and ordered her to open the door. Gardner opened the door and, once she and the man were inside, the man forced her to open a vault, used duct tape to bind her ankles and wrists together and cover her mouth, and took money and boxes from the vault.
> Smith became a suspect after the police determined that fingerprints they recovered from a roll of duct tape found at the scene were his. They thus included Smith's photograph in a six-person photographic array and showed the array to Gardner. Gardner identified Smith as the man who robbed the bank.
> The police issued a temporary "felony want" for Smith to alert other police departments that Smith was wanted for a bank robbery. A Glendale police officer learned that Smith was staying at a hotel in Glendale and contacted the Milwaukee police department. Two Milwaukee police detectives went to the hotel and arrested Smith as he was entering a hotel room. They found more than $15,000 on Smith and more than $64,000 in a suitcase. The detectives did not have an arrest warrant or a search warrant.
> Smith filed a motion to suppress the evidence recovered from him and his hotel room. He claimed that the warrantless search of his room violated the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution.
> Smith had three consecutive lawyers prior to trial. At a pre-trial scheduling conference, Smith's third lawyer informed the trial court that he could not be prepared by the trial date and Smith told the trial court that he would hire another lawyer. Approximately one week later, Smith told the court that he wanted to represent himself. The trial court questioned Smith about his education, legal experience, knowledge of legal procedure and the rules of evidence, and his ability to go to trial in less than one month. The trial court also warned Smith about the dangers of self-representation. Smith indicated that he was willing to accept the risk and subsequently represented himself at a hearing on his motion to suppress, and at trial.

(Answer, Exh. E at 2-3).

The trial court held an evidentiary hearing on the petitioner's motion to suppress on the morning of his trial. The court denied the petitioner's motion. On March 6, 2002, following a jury trial at which Milwaukee County Circuit Court Judge Victor Manian presided, the petitioner was convicted of armed robbery, with threat of force, and false imprisonment with use of a dangerous weapon. Subsequently, Judge Manian sentenced the petitioner to thirty years in prison on the robbery count, with twenty years of confinement and ten years of extended supervision, and five years on the false imprisonment count, with two years of confinement and three years of extended supervision, concurrent to the robbery sentence.

On January 16, 2003, the petitioner filed a pro se motion for a new trial claiming that the State presented false testimony, altered videotapes from the surveillance cameras at the bank he robbed and the hotel where he had been arrested, and requested an evidentiary hearing. The next day, the petitioner filed a "supplemental motion," alleging that the police had "manufactur[ed]" the fingerprints recovered from the duct tape.

The trial court denied the petitioner's motion in a written decision and order entered January 24, 2003, concluding that the petitioner's claims were frivolous and "completely incredulous." The court noted that the evidence was overwhelming:

> The defendant was positively and definitively identified as the bank robber by the woman in the bank whom he bound with duct tape. She testified he was the boyfriend of one of the bank's former employees. The defendant was identified not only from a photo array immediately following the bank robbery, but by the eyewitness in court. The defendant was apprehended at the Exel Inn with the money he took, which included the bait money. His fingerprint was found on the duct tape at the bank. The evidence was completely overwhelming. The claims he raises now are without merit and do not demonstrate that any basis exists for granting a new trial.

(Answer, Exh. E at 5). The petitioner filed a motion for "clarification and reconsideration" which the trial court summarily denied.

The petitioner appealed his conviction and the denial of his postconviction motion. The petitioner, still proceeding pro se, claimed that the trial court erred when it: (1) denied a motion to suppress evidence that was discovered during an allegedly illegal search; and (2) denied his motion for a new trial without holding an evidentiary hearing.

On June 8, 2004, the Wisconsin Court of Appeals affirmed the petitioner's conviction and the denial of his post conviction motion. The court held that the trial court had properly denied the petitioner's motion for a new trial without an evidentiary hearing because his claim of manufactured fingerprint evidence was factually insufficient to support his claim of manufactured evidence and because his allegation of altered surveillance camera videotapes was conclusory and factually insufficient. (Answer, Exh. E at 8-9). The Wisconsin Supreme Court denied the petitioner's petition for review as untimely on July 27, 2004. (Answer, Exh. H).

Subsequently, the petitioner filed a number of collateral post conviction motions in Milwaukee County Circuit Court. In a motion filed September 30, 2004, the petitioner alleged that newly-discovered evidence supported his claim of manufactured or false fingerprint evidence. The circuit court denied the motion, noting that the court of appeals had denied the petitioner's earlier claim of manufactured fingerprint evidence on his direct appeal from his conviction. The court concluded that the petitioner's new evidence did not create a reasonable probability that, if presented at trial, a different result would follow.

The petitioner appealed the circuit court order and the Wisconsin Court of Appeals affirmed in an opinion dated February 14, 2006. The Wisconsin Supreme Court denied the petitioner's petition for review on July 25, 2006.

- 7 -

Case 1:05-cv-00034-PJG    Filed 01/11/08    Page 7 of 12    Document 71

## ANALYSIS

In his brief filed in support of his petition, the petitioner does not address either his claim that his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest and search and seizure or his claim that his conviction was obtained by the unconstitutional failure of the prosecution to disclose exculpatory evidence. As it is not the responsibility of this court "to research and construct the parties' arguments," the petitioner has waived such claims. See, e.g., Spath v. Hayes Wheels Intern.-Indiana, Inc., 211 F.3d 392, 397 (7th Cir. 2000); see also Johnson v. McCaughtry, 92 F.3d 585, 595 n.19 (7th Cir. 1996). Therefore, they are summarily rejected.

As previously stated, the petitioner's brief filed in support of his petition for a writ of habeas corpus, lists these three issues:

> 1.) Did the State's expert witness manufacture false evidence and give false testimony related to fingerprint evidence.
> 2.) Was the petitioner entitled to an evidentiary hearing on his claim that the police gave false testimony and manufactured false evidence.
> 3.) Did the State deprive the petitioner of due process and a fair trial by knowingly and intentionally providing false evidence at the petitioner's trial.

(Brief and Appendix of Defendant-Petitioner Travis J. Smith at 3). Although stated in different words than his petition, the petitioner's claim is that his convictions were unconstitutionally obtained based on what the petitioner contends was false or manufactured fingerprint evidence.[1] The petitioner asserts that the basis for the fingerprint identification was not simply a mistake, but a knowingly, and intentional fabrication. The petitioner also again requests an evidentiary hearing.

---

[1] This is how the respondent characterized the petitioner's claim in his opposition brief. The petitioner did not object to the respondent's characterization.

- 8 -

In response, the respondent asserts that the petitioner's fact-based claim that the State presented false evidence was rejected on its purported facts.[2] The respondent further asserts that the factual finding of the Wisconsin courts is presumed correct unless proven otherwise and the petitioner has not proven otherwise.

The prosecution's knowing use of false testimony constitutes a denial of due process because it is incompatible with "'rudimentary demands of justice.'" United States v. Kaufmann, 783 F.2d 708, 709 (7th Cir. 1986) (quoting Mooney v. Holohan, 294 U.S. 103, 112 [1935]). Thus, "a conviction obtained by knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Bagley, 473 U.S. 667, 678 (1985) (quoting United States v. Agurs, 427 U.S. 97, 103 [1976]).

Thus, the petitioner must establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. Shasteen v. Saver, 252 F.3d 929, 933 (7th Cir. 2001) (citing United States v. Saadeh, 61 F.3d 510, 523 [7th Cir. 1995]; United States v. Verser, 916 F.2d 1268, 1271 [7th Cir. 1990]). "'Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.'" Shasteen, 252 F.3d at 933 (quoting Verser, 916 F.2d at 1271). Moreover, "[t]he alleged perjured testimony must bear a direct relationship to the defendant's guilt or innocence." United States v. Adcox, 19 F.3d 290, 295 (7th Cir. 1994).

---

[2] In its original answer to the petition, the respondent responded that the petitioner's claim was barred by procedural default. The respondent has withdrawn this defense.

- 9 -

In this case, the Wisconsin Court of Appeals, in denying the petitioner's motion for a new trial based on newly discovered evidence, held that the petitioner failed to show a reasonable probability or a even a reasonable likelihood that a different result would be reached on retrial. Specifically, the court determined that the petitioner had "not established that Immel [the technician] testified falsely." (Answer, at 2). The court stated:

> Immel testified that the computer identified ten candidates for her to do a manual comparison with the fingerprints found on the duct tape. While Smith has established that he was not the first candidate, no. 329736, he was one of the other nine candidates. Immel compared the duct tape fingerprints to the ten candidates chosen by one computer and determined that Smith's prints matched. During her testimony, Immel once referred to Smith as no. 329736. In her later testimony, she correctly identified his as no. 206624. Smith presents no evidence suggesting that Immel's testimony was anything other than a mistake that was later corrected.

Id. at 2-3. Thus, the court concluded that the petitioner "presented no evidence of false testimony and no basis for believing that his arrest and the search incident to arrest [or his conviction] resulted from erroneous fingerprint identification." Id. at 3.

The petitioner has not overcome the Wisconsin Court of Appeals' finding that he failed to establish that the technician testified falsely with clear and convincing evidence. Therefore, the appeals court's finding is correct. See 28 U.S.C. § 2254(e)(1). In other words, the petitioner has failed to establish that the prosecution's case included false testimony. Although there were inconsistencies present in the technician's testimony, "'[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.'" See Shasteen, 252 F.3d at 933 (quoting Verser, 916 F.2d at 1271).

Moreover, the petitioner makes no arguments with respect to the second and third elements of a false prosecution claim, i.e., that the prosecution knew or should have known of the perjury; and that there is a reasonable likelihood that the false testimony could have affected

- 10 -

the judgment of the jury. See Shasteen, 252 F.3d at 933. Even without the fingerprint identification, the evidence against the petitioner was overwhelming. The bank employee the petitioner tied up identified him from a photo array and made an in court identification of the petitioner. Additionally, at the time of his arrest, the police discovered $15,000 on his person and more than $64,000 in his hotel room, *including the bank's bait money*. Thus, the alleged false testimony would not bear a direct relationship to the defendant's guilt or innocence. See Adcox, 19 F.3d at 295.

Accordingly, the petitioner has failed to overcome the state court's factual determination with clear and convincing evidence. Thus, the court's finding that the technician's testimony was not false is correct. Moreover, the petitioner failed to establish that the prosecution knew or should have known that the testimony was false or that there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. Therefore, this court cannot conclude that the state court's decision on this issue is contrary to, or an unreasonable application of, Supreme Court law.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this ____ day of January, 2008.

> BY THE COURT
>
> _____
> PATRICIA J. GORENCE
> United States Magistrate Judge

O:\HABEAS\Smith Dec and Ord.wpd - 12 - January 14, 2008

Case 1:05-cv-00034-PJG   Filed 01/11/08   Page 12 of 12   Document 71